FILED

2010 Jun-10  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **GARY GOFF, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CASE NUMBER:** 7:09-CV-147 |
| | ) |
| **LaSALLE BANK, N.A., as Trustee** | ) |
| **for the MLMI Trust Series 2006-RM4,** | ) |
| | ) |
| **Defendant.** | ) |

## THE GOFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

The Goffs have been subjected to Truth-in-Lending Act ("TILA") violations that occurred at different times. The first violations took place at the time of the consummation of their loan. The second set of violations took place when LaSalle failed to recognize their rightful rescission of the loan. At the heart of the Goffs' claims is the right to cancel a loan transaction, as provided under TILA. Attendant to that right is the explicit duty of a lender to "clearly and conspicuously" make all the "material" disclosures required by TILA when a consumer mortgages his homestead. Resmae, the originator of the loan, failed to comply with that duty by failing to provide the Goffs a TILA disclosure that properly disclosed their payment period. Additionally Resmae failed to provide a proper Right-to-Cancel notice. LaSalle is liable here under the provisions of 15 U.S.C. § 1641, because it claims to be an assignee of the loan.

### I.    PLAINTIFFS' CLAIMS FOR STATUTORY DAMAGES ARE NOT TIME BARRED.

After rescission by the Goffs, LaSalle failed to take the required actions in recognition of the rescission. Comp. at ¶ 13. This is a new and further violation of TILA. A claim for these TILA violations is clearly stated in the Complaint and is not time barred.

Section 1635(b) imposes immediate requirements upon the lender for which there is a separate claim for TILA violation if not followed. "Under § 1635(b),[ ] all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." *Williams v. Homestake Mortgage Co.* 968 F.2d 1137, 1140 (11th Cir. 1992).

While section 1635(b) does not guaranty a "free-ride" for the consumer, it is an inherently pro-borrower remedy and "[i]t is apparent from the plain language of the statute that the borrower does not have to tender the proceeds of the loan before invoking her right to rescind unless and until a court decides otherwise and modifies the statutory scheme." *Johnson v. Chase Manhattan Bank, USA N.A.,* 2007 U.S. Dist. LEXIS 50569, 2007 WL 2033833, *5 (E.D. Pa. July 11, 2007).

Section 1635 is designed to provide an incentive for lenders to get the disclosure right the first time - something that did not happen here. In other words, whatever burden this process places upon the lender, or assignee, when served with a rescission notice, is a result intended by Congress as part of the enforcement tools inherent in the TILA regulatory scheme.

These points are echoed in the recent summary of the § 1635(b) procedure by Judge William H. Steele in a case similar to the one at bar:

> The statute delineates a specific procedure to be followed when the debtor exercises its right of rescission. In particular, § 1635(b) provides that upon

receipt of notice of rescission, the creditor shall return all earnest money or downpayments to the debtor and shall terminate its security interest in the property. "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor." 15 U.S.C. § 1635(b); *see also Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) ("upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest"). Thus, the statute contemplates a three-step sequence in which the debtor notifies the creditor of exercise of rescission rights, the creditor tenders all payments received from the debtor and terminates its security interest in the residence, and the debtor tenders the loan proceeds to the creditor. The Eleventh Circuit has explained that the "sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission." *Williams*, 968 F.2d at 1140. In this context, "all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." *Id.* [Footnote omitted] The net effect of this reconfiguration of conventional rescission procedures is that the consumer is placed in a much stronger bargaining position than he or she would otherwise enjoy. See *id*. **If the creditor fails to comply with the § 1635(b) procedure following receipt of the rescission demand, that omission constitutes a separate violation of TILA**. *See Belini*, 412 F.3d at 25 (if creditor failed to return all money paid and void security interest within 20 days after receipt of valid notice of rescission, creditor had "generally violated a 'requirement' of section 1635"); *see also In re Hopkins*, 372 B.R. 734, 751 (Bankr. E.D. Pa. 2007) ("The failure to honor a valid rescission demand is itself a TILA violation ....") (citation omitted). ( Emphasis added.)

*Williams v. Saxon Mortgage Company*, 2008 WL 45739 (S.D. Ala. January 2, 2008).

The statutory violations complained of herein occurred when LaSalle failed to take the steps required by § 1635 within 20 days of receipt of Exhibit "A" hereto, the Goffs' cancellation notice. The loan was rescinded on September 30th 2008. The Goffs filed this action on January 26th 2009, well within one year of LaSalle's failure to recognize their rescission.

## II.   THE GOFFS' RESCISSION WAS TIMELY

A "consumer's ability to rescind an agreement may be extended for up to three years if the creditor fails to make all material disclosures required by TILA." *Williams Supra.* at 1139 n.5. Plaintiffs here have alleged two separate violations that entitle them to the extended rescission period. First, they were given defective Right-to-Cancel ("RTC") notices and second, their TILA disclosure omitted the payment period of their loan. Each of these is discussed separately below.

A.      **The Goffs' RTC notice was defective.**

LaSalle cites *McMillian v. AMC Mortg. Servs.,* 560 F. Supp. 2d 1210, (S.D. Ala. 2008) and *Ward v. Lime Fin. Servs.,* 2009 U.S. Dist. LEXIS 98619 (S.D. Ala. Oct. 5, 2009) for the proposition that the use of an undated RTC notice by a lender does not give a borrower an extended right to rescind his loan. Both *McMillian* and *Ward* rely primarily on *Smith v. Highland Bank*, 108 F.3d 1325, 1326 (11th Cir. 1997) and *Veale v. Citibank, F.S.B.,* 85 F.3d 577 (11th Cir. 1996).

The *McMillian* Court stated, "[t]he "The Smith panel also opined that "Congress would not have us adopt a hypertechnical reading of any part of TILA." Id. at 1327 n.4. This view is fully consistent with a prior panel decision indicating that "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision (Sic) rights." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) (notice of rescission rights satisfies TILA where it is "reasonably clear" and "provides sufficient notice"). *McMillian v. AMC Mortg. Servs.,* 560 F. Supp. 2d 1210, 1218 (S.D. Ala. 2008).

Likewise, the *Ward* Court said, "'TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision (sic) rights." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996); see *Smith v. Highland Bank,* 108 F.3d 1325, 1326

(11th Cir. 1997). "Unlike the general civil liability section of the Truth-in-Lending Act, 15 U.S.C. s 1640, which provides for liability for any non-disclosure, the rescission provisions under 15 U.S.C. § 1635 require that the nondisclosure be material." *Ward v. Lime Fin. Servs*., 2009 U.S. Dist. LEXIS 98619 (S.D. Ala. Oct. 5, 2009).

Both *Smith*[1] and *Veale*[2] were interpreting TILA and Regulation Z as they were prior to the 1995 Amendments. The Federal Reserve Board re-promulgated the requirements for the rescission notice in 1996, a year after those amendments. See 61 Fed. Reg. 49,237 (Sept 19th 1996). Specifically the Federal Reserve stated, "[t]hese revisions implement the Truth in Lending Act amendments of 1995." Furthermore the new Official Staff Commentary to 12 C.F.R. § 226.23(b)(1) states, "3. Content. The notice <u>must</u> include all of the information outlined in Section 226.23(b)(1)(i) through (v)." (Emphasis added.)

"The Official Staff Commentary to Regulation Z published by the Board is binding and dispositive in TILA cases unless the commentary is determined to be demonstrably irrational." *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (U.S. 1980) ("[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

15 U.S.C. § 1635(a) specifically calls on creditors to, "clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction

---

[1] "The transaction was closed on February 28, 1994." *Smith v. Highland Park*, 915 F. Supp. 281, 284 (N.D. Ala. 1996)

[2] "In July of 1989, the Veales borrowed $361,800 from Citibank." *Veale v. Citibank, F.S.B.,* 85 F.3d 577, 579 (11th Cir. 1996)

subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." In other words, the statute mandates that Federal Reserve Board promulgate "appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." In accordance with that mandate the Federal Reserve Board promulgated 12 C.F.R. § 226.23(b)(1) which states:

> (b)(1)  *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i)  The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii)  The consumer's right to rescind the transaction.
>
> (iii)  How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv)  The effects of rescission, as described in paragraph (d) of this section.
>
> (v)  **The date the rescission period expires.**
>
> (Emphasis added.)

Clearly, *Ward* and *McMillian* courts did not give proper deference to Regulation Z or the Official Staff Commentary. Also, their reliance on *Smith* and *Veale* was misplaced in light of the fact that the Board reaffirmed its position that the RTC notice must contain the date the rescission period expires.

LaSalle, in its reply, will undoubtedly cite a recent Seventh Circuit case, *Melfi v. WMC Mortg. Corp.,* 568 F.3d 309 (1st Cir. 2009). In affirming the dismissal of a TILA rescission case by a District Court the First Circuit said:

> [T]he argument for allowing Melfi to extend his deadline from three days to three years depends on this premise: that any flaw or deviation should be penalized automatically in order to deter such errors in the future. If Congress had made such a determination as a matter of policy, a court would respect that determination; possibly, this would also be so if the Board had made the same determination. See *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Melfi argues at length that we owe such deference to the Board.
>
> The answer is that there is no evidence in TILA or any Board regulation that either Congress or the Board intended to render the form a nullity because of an uncompleted blank in the form or similar flaw where, as here, it could not possibly have caused Melfi to think that he had months in order to rescind. The central purpose of the disclosure--the short notice period for rescission at will--was plain despite the blanks. Melfi's argument assumes, rather than establishes, that a penalty was intended.
>
> Some cases finding a blank notice form to be grounds for rescission even though harmless were decided under an earlier version of TILA. In 1995, Congress added a new subsection to TILA, titled "Limitation on Rescission Liability." It provided that borrower could not rescind "solely from the form of written notice used by the creditor . . . if the creditor provided the [borrower] the appropriate form of written notice published and adopted by the Board . . . ." Truth in Lending Act Amendments of 1995, Pub L. No. 104-29, § 5, 109 Stat. 271, 274 (1995) (codified at 15 U.S.C. § 1635(h)).
>
> Read literally, this safe harbor may not be available to WMC because, while it used the Board's form of notice, it did not properly fill in the blanks. But the TILA amendments were aimed in general to guard against widespread rescissions for minor violations. *McKenna v. First Horizon Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007). To this extent, Congress has now leaned against a penalty approach and, perhaps, weakened the present force of the older case law favoring extension of the rescission deadline.
>
> In any event, in the absence of some direction from Congress or the Board to impose a penalty, we see no policy basis for such a result. Where, as here, the Board's form was used and a reasonable borrower cannot have been misled, allowing a windfall and imposing a penalty serves no purpose and, further, is at odds with the general approach already taken by this court in *Palmer.*

*Melfi* at 312-313.

The First Circuit, in *Melfi*, completely ignores the language quoted from the Official Staff Commentary above and incorrectly and states, as quoted above, "that there is no evidence in TILA or any Board regulation that either Congress or the Board intended to render the form a nullity because of an uncompleted blank in the form or similar flaw[.]" Compare Judge Boudin's statement to the Commentary: "The notice **must** include all of the information outlined in Section 226.23(b)(1)(i) through (v )." (Emphasis added.)

In any event, the Goff's RTC notice contained even less information that the ones considered in *Melfi, Ward or McMillian*. In *Melfi* "the borrower was given a RTC notice that he claimed "was deficient because it left blank the spaces for the date of the transaction (although the date was stamped on the top right corner of the notice) and the actual deadline to rescind." *Melfi* at 310.

In *Ward* "[t]he notices at issue, on a separate page signed by the borrowers, state clearly that the borrower has a legal right to cancel the transaction, without cost, within three business days from the latest of (a) the date of the transaction, (b) the date they received their TIL disclosures, or (c) the date they received their notice of their right to cancel. (See exhibits to Doc. 46). Although the Notices do not state the date of the transaction, the borrowers dated the forms when they signed them. Thus, it is a simple matter for a reasonable borrower to calculate the date by which they were required to exercise their rescission rights from the information provided." *Ward* at P. 16.

The RTC notice in *McMillian* also contained the date of the transaction, See Exhibit "B" filed herewith.[3] The Goffs' RTC notice (Ex. D), in contrast, is entirely un-dated and even more deficient that the ones considered in *Ward* and *McMillian*. Thus, the Goffs' defective RTC notice entitles them to rescission of this loan.

**B.      The failure to properly disclose the payment period also entitles the Goffs to rescind the loan at issue.**

As stated above, the three-day cancellation period provided under Section 1635(a) does not begin to run until the borrower is provided with all "material disclosures." Relevant here is the failure to disclose the payment period. The omission of the payment period is not considered a trivial matter by TILA. In fact the "the due dates or periods of payments scheduled to repay the indebtedness" is one of the disclosures considered by TILA to be "Material." See 15 U.S.C. 1602(u).

The failure to properly disclose the payment period was recently addressed by the Seventh Circuit in *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007) (Writ of certiorari denied by *Ameriquest Mortg. Sec., Inc. v. Hamm,* 128 S. Ct. 1706) The *Hamm* court stated:

> TILA imposes an explicit requirement that a lender include "[t]he number, amount, and *due dates or period of payments scheduled to repay the total of payments*," in its Disclosure Statement to the borrower. 15 U.S.C. § 1638(a)(6) (emphasis added); see also 12 C.F.R. § 226.18(g)(1). The relevant section of the FRB commentary states that: To meet this requirement creditors may list all of the payment due dates. They also have the option of specifying the "period of payments" scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "bi-weekly," and the calendar date the beginning payment is due. For example, a creditor may disclose that payments are due "monthly beginning on July 1, 1988." This information, when combined with the number of payments, is necessary to define the repayment period and

---

[3] The RTC notices of McMillian, Ward and Goff are filed as Exhibits B, C and D respectively.

enable a consumer to determine all of the payment due dates. Supp. I, para. 18(g)(4)(I); 63 Fed. Reg. 16673. An "Exception" section immediately follows and allows some flexibility in the narrow situation where the first date of the lending period is unknown at the time the loan is issued. Supp. I, para. 18(g)(ii). This rule and exception are all that the commentary has to say about § 226.18(g)'s requirement to disclose the payment period. The FRB's interpretation does not strike us as so irrational that we would be required to disregard it. We conclude, therefore, that TILA requires a lender to state clearly on the Disclosure Statement either the due dates or period of payments scheduled. The question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period.

"[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565 (U.S. 1980) Every Circuit Court that has examined the issue has accorded deference to the interpretations of Regulation Z and it's Commentary. *Cetto v. LaSalle Bank National Association,* 518 F.3d 263 (4th Cir. 2008) (Recognizing the Federal Reserve Board and staff as the primary source of interpretation of the TILA); *Hamm v. Ameriquest* Supra. (Courts pay particular heed to the FRB Staff Commentary to TILA's regulations when evaluating an alleged TILA violation.") *Ortiz v. Rental Management Inc.,* 65 F.3rd 335 (3rd Cir. 1995) ("In the presence of such an explicit delegation of congressional authority, we must defer quite broadly to the Board's interstitial regulations."); *Fairley v. Turan Foley Imports Inc.,* 65 F.3rd 475, (5th Cir. 1995) ("To that end, Congress, through the Act, gave the Federal Reserve Board the authority normally given to administrative agencies to promulgate regulations designed to carry out the purposes of the Act... The language of the Act's enabling provision also emphasized the Board's authority to prevent evasion of the

rules."); *First National Bank of Council Bluffs, Iowa v. Office of the Comptroller*, 956 F2d. 1456 (8th Cir. 1992) ("These Supreme Court cases make it abundantly clear that ... attack on the validity of the Official Staff Commentary must fail unless ... demonstrably irrational.").

Finally, a district court from the Northern District of Georgia has also ruled that the omission of "monthly" from the TILA disclosure results in an extended right to rescind saying:

> Under TILA, a creditor shall disclose . . . [t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6). Regulation Z, which implements TILA, states that a creditor must disclose a payment schedule, describing "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g). The FRB Commentary on Regulation Z provides further guidance on disclosing the timing of payments: Section 226.18(g) requires creditors to disclose the timing of payments. To meet this requirement creditors may list all of the payment due dates. They also have the option of specifying the period of payments scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "biweekly," and the calendar date that the beginning payment is due.12 C.F.R. pt. 226, Supp. I (2005). The "[FRB] staff opinions construing the Act or Regulation [Z implementing the Act] should be dispositive. . . ." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980). In the Disclosure Statement, Ameriquest disclosed the dates of the first payment, the twenty-fifth payment, and the last payment (all of which fell on the first of the month), the number of payments, and the dates when those payments began. The Disclosure Statement lists the following:

| Number of Payments | Amount of Payments | Payments are Due Beginning |
|---|---|---|
| 24 | $ 501.49 | 11/01/2002 |
| 335 | $ 513.19 | 11/01/2004 |
| 1 | $ 508.70 | 10/01/2032 |

Additionally, Ameriquest notes that there were numerous other documents in the closing package that disclosed that the payments were due monthly. Ameriquest argues that the cumulative information provided to Kitchen was adequate under TILA.

Ameriquest relies on *Smith v. Chapman, 614 F.2d 968 (5th Cir. 1980),* which states that strict compliance with TILA "does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation." *Id. at 972.* In *Shroder v. Suburban Coastal Corp., 729 F.2d 1371 (11th Cir. 1984),* however, the court elaborated on its holding in Chapman, stating:

> We never stated nor intend to imply that it is unnecessary to make the disclosures in the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z. Liability will flow from even minute deviations from requirements of the statute and Regulation Z.

*Id. at 1380.* Ameriquest further requests that the court apply the more recent holding of Daniels v. Ameriquest Mortgage Co., No. 1:03-CV-0007-GET (N.D. Ga. July 2, 2004), in which Judge Tidwell affirmed the Magistrate Judge's ruling, stating that "listing the due date for the first and last payments, combined with the number of payments required, properly defines the repayment [*13] period and enables plaintiffs to determine all of the payment due dates." Id. [3] Notwithstanding the logical appeal of the argument that it should have been obvious to the consumer that payments were due on a monthly basis, it is immaterial whether the nondisclosure actually confused Kitchen. A "consumer may sue for enforcement even if she is not actually deceived or harmed." *Rodash, 16 F.3d at 1145.*

Based on the court's review of TILA, Regulation Z, relevant commentary, *Schroder,* and recent case law from within this district, the court finds that the fact that "monthly" was not contained in the Disclosure Statement is violative of TILA and Regulation Z.

*Kitchen v. Ameriquest Mortg. Co.,* 2005 U.S. Dist. LEXIS 43937, 14-15 (N.D.

Ga. Apr. 29, 2005)(Foot notes omitted.)

A court in the Southern District of Alabama recently denied a motion to dismiss a

case where the Plaintiffs were seeking rescission on several grounds, including the

omission from their TILA disclosure of the payment period saying:

> It would seem logical to assume that 24 payments of a certain amount which commenced on March 1, 2007, and were followed by 6 payments of a different amount commencing 2 years, or 24 months later, on March 1, 2009, would mean monthly statements. However, as the Seventh Circuit

succinctly held in Hamm v. Ameriquest Mortg. Co., 506 F.3d 525, 531 (7th Cir. 2007), *cert. denied*, 128 S.Ct. 1706 (2008):

> We emphasize that we are not holding that a Disclosure Form that fails to use the magic word "monthly" will always fail to comply with the requirement in § 1638(a)(6) of disclosing the payment period. The Commentary itself lists "monthly" and "bi-weekly" only as two examples of the way in which a lender might comply with the rule. The key point is that the borrower should not have to make any assumptions; she should be told her payment period in explicit terms. (For example, a Disclosure Statement that said "payment is due on the first of every month from March 1, 2002, through January 1, 2032," would effectively tell the borrower that her payment period is monthly without using the word "monthly.") Because Ameriquest's form required such an assumption, it did not meet TILA's requirements.

Although Plaintiffs in the case at bar may have been given more information between the first payment and last upon which to base their assumption that the designated payments were due monthly they nonetheless were required to **make an assumption** which appears to contravene the requirements and very purpose of TILA.

Prince v. U.S. Bank N.A. Civil Action No. 08-00574-KD-N Southern District of Alabama. (A copy of this opinion is filed herewith as exhibit E.)

CONCLUSION

For the reasons stated above the Defendant's Motion for Judgment on the Pleadings should be denied.

Respectfully Submitted,

/s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr. (UNDEE6591)

Underwood & Riemer, P.C.
21 South Section Street
Fairhope Alabama 36532
Telephone (251) 990-5558
Facsimile  (251) 990-0626 (Fax)
epunderwood@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10th 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Barry A. Ragsdale
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
Birmingham, Alabama 35205
(205) 930-5100 (Telephone)
(205) 930-5101 (Facsimile)
bragsdale@sirote.com

<u>/s Earl P. Underwood, Jr.</u>
Earl P. Underwood, Jr.

# EX. A

The Law Offices of

# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

September 30th 2008

Via U.S. First Class Certified Mail to:

LaSalle Bank Corporation
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Via U.S. First Class Mail to:

Wilshire Credit Corporation
PO Box 8517
Portland OR 97207-8517

**NOTICE OF CANCELLATION OF LOAN
AND QUALIFIED WRITTEN REQUEST**

**Re:  Notice of Cancellation
Loan Number: 2711682
Closing date: June 20, 2006
Borrower Name: Gary Goff
Enclosure #1: Undated 3 day Notice of Right to Cancel Form
Enclosure #2:  Truth-In-Lending Disclosure Statement**

Dear LaSalle Bank Cancellation Officers:

I am writing on behalf of Gary Goff to provide you with notice of the exercise of his right to rescind the above-reference loan pursuant to 15 U.S.C. § 1635. You should regard this as notice, pursuant to 12 C.F.R. § 226.15, of their election to rescind that loan.

Mr. Goff has retained his right to rescind this loan because of the failure of LaSalle Bank to comply with the disclosure requirements set out in the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). Specifically, the Truth In Lending Disclosure fails identify the payment period as defined by TILA and should have been disclosed as such. ( See Enclosure #1)

The borrower was not given proper notice of the right to cancel.  Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. §

21 South Section Street Post Office Box 969 Fairhope, Alabama 36533-0969 Voice (251) 990-5558
Fax (251) 990-0626 www.alalaw.com Email: epunderwood@alalaw.com

The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

226.23(b)(5).   The Notice of Right to Cancel form provided at the closing **(Enclosure #2)** contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h).   Because LaSalle failed to properly advise the borrower of the right to cancel three business days before the "cooling off" period expires, the borrower retains the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3).

The 5th Circuit held in Williamson v. Lafferty, 698 F.2d 767, 768-769 (5th Cir. 1983) that the failure to date the Notice of Right to Cancel gave the borrower an unqualified right to cancel:

> "Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor *shall* complete rescission form *including* date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.")

See, also, Taylor v. Domestic Remodeling, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Mr. Goff reserves his right to pursue other remedies, including money damages and attorneys fees, in addition to this exercise of his right to rescind.

Additionally please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). This request is made on behalf of Gary Goff. Specifically, we are requesting the following information:

1.   The amount of any legal fees added to the principal debt in this case or charged against the account for any legal services.

2.   The amount of any property inspection fees, property preservation fees, broker price opinion fees, bankruptcy monitoring fees, or other similar fees or expenses added to the principal debt or charged against the account or associated with any account related to this loan.

3.   The amount of any arrears including the months that the payments were missed, the aggregate late charges imposed and the basis for the imposition of each late charge fee

# The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

4.     The current amount needed to pay-off the loan in full in the form of an itemized printed payoff report.

5.     A complete payment and transaction history for this loan, including all entries of any nature in the form of a debit, a credit, a transfer or otherwise.

6.     The amount of any funds deposited in any suspense accounts or corporate advance accounts or any other similar accounts and a description of all payments from any such accounts including the date of the payment, the purpose or nature of the payment, and the amount of each such payment.

7.     A copy of any assignment of Mr. Goff's mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your client has with any party.

8.     A copy of his loan file including any and all documents executed in connection with his loan.

To the extent that the servicer of this mortgage loan has charged the debtor's mortgage loan account, any appraisal fees, broker price opinion fees, property inspection or preservation fees, legal fees, bankruptcy/Proof of Claim fees, recoverable corporate advances and other fees or costs that were not disclosed to the debtor(s) and approved by the bankruptcy court, the debtor(s) dispute(s) any such fees and costs and specifically requests that the account be corrected.

Sincerely,

Earl P. Underwood, Jr.

EPUjr/dcl
cc: Gary Goff

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:

**RESMAE MORTGAGE CORPORATION**
**6 POINTE DRIVE BREA, CALIFORNIA 92821**

[x] Preliminary    [ ] Final
*DATE:* **JUNE 20, 2006**
*LOAN NO.:* **1001938507**
*Type of Loan:* **CONVENTIONAL**
**228Z**

BORROWERS: **GARY GOFF**

**11.040%**

ADDRESS: **4303 6TH ST. E.**
CITY/STATE/ZIP: **TUSCALOOSA, ALABAMA 35404**
PROPERTY: **4303 6TH ST. E., TUSCALOOSA, ALABAMA 35404**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **11.7757 %** | $ **214,529.66** | $ **79,707.81** | $ **294,237.47** |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 24 | 791.03 | Sep 1st, 2006 | | | |
| 335 | 805.25 | Sep 1st, 2008 | | | |
| 1 | 804.00 | Aug 1st, 2036 | | | |

**DEMAND FEATURE:**   [x] This loan does not have a Demand Feature.   [ ] This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
[x] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at: **4303 6TH ST. E., TUSCALOOSA, ALABAMA 35404**

**ASSUMPTION:**   Someone buying this property   [x] cannot assume the remaining balance due under original mortgage terms
[ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:**   $   **174.30**

**PROPERTY INSURANCE:**   [x] Property hazard insurance with a mortgagee clause to the lender is a required condition of this loan.  Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance   [ ] is   [x] is not available through the lender at an estimated cost of $   **$0.00**   for a   **0.00** year term.

**LATE CHARGES:**   If your payment is more than **15** days late, you will be charged a late charge of   **5.000** % of the overdue payment

**PREPAYMENT:**   If you pay off your loan early, you
[ ] may   [x] will not   have to pay a penalty.
[ ] may   [x] will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
**ALL DATES AND NUMERICAL DISCLOSURES, EXCEPT THE LATE CHARGE DISCLOSURES, ARE ESTIMATES.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   _____   _____
**GARY GOFF**                        BORROWER / DATE                              BORROWER / DATE

_____   _____   _____
                                           BORROWER / DATE                              BORROWER / DATE

**LENDER:   RESMAE MORTGAGE CORPORATION**

**PROPERTY:   4303 6TH ST. E., TUSCALOOSA, ALABAMA 35404**

**LOAN NO.:   1001938507**

## NOTICE OF RIGHT TO CANCEL

**YOUR RIGHT TO CANCEL.** You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.) the date of the transaction, which is [＿＿＿＿＿＿＿＿＿＿＿＿]; or
2.) the date you received your Truth In Lending disclosures;
3.) the date you received this notice of right to cancel.

If you cancel the transaction, the [mortgage/lien/security interest] is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you may offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL.**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
**RESMAE MORTGAGE CORPORATION**
**5300 TOWN AND COUNTRY ROAD SUITE 320, FRISCO, TX 75034**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of [＿＿＿＿＿＿＿＿＿＿], (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____        _____
Consumer Signature                                                        Date

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective as to all borrowers/owners.

**Receipt of Notice.** I hereby acknowledged that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Do not sign unless the dates in the boxes are completed.**

_____ Date        _____ Date
Borrower/Owner                                                    Borrower/Owner
**GARY GOFF**

_____ Date        _____ Date
Borrower/Owner                                                    Borrower/Owner

_____ Date        _____ Date
Borrower/Owner                                                    Borrower/Owner

ResMAE (R00048)                        Page 2 of 2



**Law Offices of**

# Underwood, Jr.

LaSalle Bank Corporation
The Corporation Trust Company                    mber 30th 2008
Corporation Trust Center
1209 N Orange St
Wilmington DE 19801-1196

Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Via U.S. First Class Mail to:

Wilshire Credit Corporation
PO Box 8517
Portland OR 97207-8517


### NOTICE OF CANCELLATION OF LOAN
### AND QUALIFIED WRITTEN REQUEST

**Re:  Notice of Cancellation**
**Loan Number: 2711682**
**Closing date: June 20, 2006**
**Borrower Name: Gary Goff**
**Enclosure #1: Undated 3 day Notice of Right to Cancel Form**
**Enclosure #2:  Truth-In-Lending Disclosure Statement**

Dear LaSalle Bank Cancellation Officers:

I am writing on behalf of Gary Goff to provide you with notice of the exercise of his right to rescind the above-reference loan pursuant to 15 U.S.C. § 1635. You should regard this as notice, pursuant to 12 C.F.R. § 226.15, of their election to rescind that loan.

Mr. Goff has retained his right to rescind this loan because of the failure of LaSalle Bank to comply with the disclosure requirements set out in the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). Specifically, the Truth In Lending Disclosure fails identify the payment period as defined by TILA and should have been disclosed as such. ( See Enclosure #1)

The borrower was not given proper notice of the right to cancel.  Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. §

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|

■ Complete items 1, 2, and 3. Also complete
Item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

A. Signature

X _Scott Sabato_ ☐ Agent ☐ Addressee

B. Received by ( *Printed Name*)    C. Date of Delivery    OCT 7 2008

1. Article Addressed to:

LaSalle Bank Corporation
The Corporation Trust Company
Corporation Trust Center
1209 N Orange St
Wilmington DE 19801-1196

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*   7005 1160 0004 3936 2764

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EX. B

## NOTICE OF RIGHT TO CANCEL

LENDER:   Bedford Home Loans, Inc.

DATE:   June 21, 2004
LOAN NO.:   0082796046 – 6146
TYPE:   ADJUSTABLE RATE

BORROWER(S): Ruby McMillan        John McMillan

ADDRESS:        1413 Polaris Dr
CITY/STATE/ZIP:   Mobile, AL 36693

PROPERTY:   1413 Polaris Dr
            Mobile,  AL  36693

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

_____   ;

or

2.   The date you received your Truth in Lending disclosures;

or

3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Bedford Home Loans, Inc.                         ATTN:  FUNDING
1100 Town and Country Road, Suite 900            PHONE: (800)305-3038
Orange, CA 92868                                 FAX:    (714)664-8896

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL.

_____                    _____
SIGNATURE                                           DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER Ruby McMillan        Date        BORROWER/OWNER John McMillan        Date

BORROWER/OWNER                      Date        BORROWER/OWNER                      Date

1944-R2C (Rev 01/01)                                            **LENDER COPY**

06/21/2004 1:56:22 PM

# EX. C

## NOTICE OF RIGHT TO CANCEL

WARD
Loan #: 50016127

Borrowers:   **AARON D WARD**
             **KAYNATRICE D. WARD**

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

     (1)    the date of the transaction, which is _____ ; or
     (2)    the date you received your Truth-in-Lending disclosures; or
     (3)    the date you received this notice of your right to cancel.

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:
     **LIME FINANCIAL SERVICES, LTD.**
     **5885 SW MEADOWS ROAD, STE 600**
     **LAKE OSWEGO, OR 97035**
You may use any written statement that is signed and dated by you and states your intention to cancel or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights. If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day* following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____        Date:_____

### RECEIPT OF NOTICE OF RIGHT TO CANCEL

Each of the undersigned have now received two Notice of Right to Cancel forms. The above real estate loan cannot be funded until three (3) business days* have elapsed since the date of this acknowledgement of receipt of the Notice of Right to Cancel.

*Business days include all days except Sundays, New Year's Day, Martin Luther King Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day.

Date Notice of Right to Cancel form received: _____ .

_____  7/22/05
- BORROWER - AARON D WARD - DATE -

_____  7/22/05
- BORROWER - KAYNATRICE D. WARD - DATE -

2852                                   Page 1 of 1

# EX. D

**LENDER:    RESMAE MORTGAGE CORPORATION**

**PROPERTY:  4303 6TH ST. E., TUSCALOOSA, ALABAMA 35404**

**LOAN NO.:   1001938507**

## NOTICE OF RIGHT TO CANCEL

**YOUR RIGHT TO CANCEL.** You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.)   the date of the transaction, which is [                    ]; or
2.)   the date you received your Truth In Lending disclosures;
3.)   the date you received this notice of right to cancel.

If you cancel the transaction, the [mortgage/lien/security interest] is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL.**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
**RESMAE MORTGAGE CORPORATION**
**5300 TOWN AND COUNTRY ROAD SUITE 320, FRISCO, TX 75034**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of [                    ] , (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____        _____
Consumer Signature                                                    Date

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective as to all borrowers/owners.

**Receipt of Notice.** I hereby acknowledged that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Do not sign unless the dates in the boxes are completed.**

_____ Date        _____ Date
Borrower/Owner                                                       Borrower/Owner
GARY GOFF

_____ Date        _____ Date
Borrower/Owner                                                       Borrower/Owner

_____ Date        _____ Date
Borrower/Owner                                                       Borrower/Owner

EX. E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARTON E. PRINCE and ANGELA W. PRINCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-00574-KD-N |
| | ) | |
| U. S. BANK NATIONAL ASSOCIATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>REPORT AND RECOMMENDATION</u>

This action is before the Court on the motion of defendants, Mortgage Electronic Registration Systems, Inc., ("MERS"), Select Portfolio Servicing, Inc., ("SPS") and U.S. Bank National Trust Association ("U.S. Bank Trust") to dismiss plaintiffs' First Amended Complaint ("FAC").  (Doc. 32) Defendants' motion is essentially predicated on the contention that  Plaintiffs' claims are premised on the erroneous assertion that they have a right to rescind their mortgage loan for violation of the Truth-in-Lending Act ("TILA")[1].  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of the motion, Plaintiffs' response in

---

[1] The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). When lenders violate the statute, Congress provides consumers with the right to rescind a consumer credit transaction in which a security interest is retained in the borrower's home. 15 U.S.C. § 1635(a).

opposition thereto (Doc. 45), Defendants' reply (Doc. 48) and all other pertinent portions

of the record, it is recommended that the motion be denied <u>in part</u> and granted <u>in part</u> as

set out herein.

1.    <u>Background</u>.

On January 26, 2007, Barton E. Prince and Angela W. Prince, Plaintiffs herein,

executed a non-residential mortgage loan with Resmae Mortgage Corporation ("Resmae")

in the amount of $270,000.00.  The loan was secured by their principal residence and was

subsequently assigned to a mortgage pool, trust or other investment vehicle.[2]   In

connection with the loan, Plaintiffs signed the Truth-in-Lending Disclosure Statement

("TILDS") which indicated that the annual percentage rate for this loan was 10.7115%;

that the finance charge, described as "the dollar amount the credit [would] cost

_____

[2]Although not relevant to the present motion, the Defendants identify themselves
and other related entities as follows: (1) U.S. Bank National Trust Association ("U.S.
Bank Trust") "is the trustee and manages the trust which owns the loan, and now the
property by virtue of foreclosure"; (2) "The trust/owner of the loan (and now property by
virtue of foreclosure) are those holders of the Home Equity Asset Trust 2007-2 Home
Equity Pass-Through Certificates, Series 2007-2"; (3) "MERS was created by the
Mortgage Bankers Association, Ginnie Mae, Freddie Mac, and other parties in the real
estate finance industry as an electronic registration and tracking system," is designated as
the nominee for Resmae Mortgage Corporation on Plaintiffs' mortgage, and, as nominee,
assigned the mortgage to U.S. Bank Trust "[p]rior to foreclosure" ; (3) Select Portfolio
Servicing, Inc. ("SPS") is a mortgage loan servicer which "simply services the debt that is
associated with this loan which includes prosecuting and defending actions against the
trust that owns the loan . . . by virtue of a Power of Attorney given to it by U.S. Bank
Trust and pursuant to the Pooling and Servicing Agreement which governs the U.S. Bank
Trust.

[plaintiffs]," was $850,446.70; that the amount financed was $264,589.26; and the total payments, or "[t]he amount [plaintiffs] will have paid after [plaintiffs] have made all payments as scheduled," was $1,100,035.96.  (Doc. 32-2).  The TILDS document also provided the following payment schedule: 24 payments of $1,771.81 beginning Mar. 1st, 2007; 6 payments of $1,970.06 beginning Mar. 1st, 2009; 6 payments of $2,172.81 beginning Sep. 1st, 2009; 6 payments of $2,379.19 beginning Mar. 1st, 2010; 6 payments of $2,588.47 beginning Sep. 1st 2010; 311 payments of $2,620.03 beginning Mar. 1st 2011; and 1 payment of $188,020.01 on Feb. 1st, 2037.  (Doc. 32-2).

Plaintiffs contend that Resmae "failed to provide accurate TILA disclosures, understated the finance charge and used a TILA disclosure that omitted disclosure of the payment period in violation of 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g)."  (FAC at ¶ 16)  Plaintiffs further contend that they "exercised their TILA rescission rights on June 2, 2008 based on the defective disclosures" and "notified U.S. Bank Trust of their election to rescind the loan."  (FAC at ¶ 18).  According to the Plaintiffs, U.S. Bank Trust did not respond or otherwise comply with 15 U.S.C. § 1635 after it received notice of the rescission, an allegation not contested by the Defendants.[3]

Defendants simply aver that, "[o]n July 11, 2008, MERS assigned all of its rights to Plaintiffs' mortgage to U.S. Bank National Trust Association, as Trustee, on behalf of the holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through

---

[3]Defendants maintain throughout that the Plaintiffs have no right to rescind the loan.

Certificates, Series 2007-2."[4]  Defendants then acknowledge that "on September 29, 2008, Plaintiffs' mortgage was foreclosed by U.S. Bank Trust."  Plaintiffs contend that MERS possessed no legal interest in either the loan or the security for that loan, namely their residence, and thus could not assign any such interest to U.S. Bank Trust. Consequently, Plaintiffs argue that U.S. Bank Trust could not validly foreclose on plaintiff's mortgage.

On October 2, 2008, Plaintiffs filed this lawsuit against U.S. Bank Trust to obtain "a court determination that their loan transaction has been rescinded [and] statutory and actual damages for wrongful foreclosure, violations of TILA, plus attorney's fees and costs."  On March 4, 2009, Plaintiffs filed a First Amended Complaint which added MERS and Select Portfolio Servicing, Inc. ("SPS") as defendants and further allegations against U.S. Bank Trust.

Defendants' motion to dismiss (Doc. 32) was filed on March 30, 2009.  Discovery was stayed by the Court on April 1, 2009 (Doc. 39) pending resolution of the motion to dismiss.  Plaintiffs' opposition brief (Doc.45) was filed on April 30, 2009.  Defendants' reply (Doc. 49) was filed on May 8, 2009.

II.    Discussion.

A.    Standard of Review

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss

_____

[4]The assignment by MERS to U.S. Bank Trust was not recorded in the real-estate records in Baldwin County until October 13, 2008.  (Doc. 30-3).

4

a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," language set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This language as it relates to the Rule 12(b)(6) standard was expressly rejected in Twombly wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. The Supreme Court recently reinforced the Twombly standard in Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009). The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 557. *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts

5

suggestive of [the proscribed] conduct'."), *quoting* <u>Twombly</u>, 550 U.S. at 553, n. 8. *See also*, <u>Sinaltrainal v. Coca-Cola Co.</u>, 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* <u>Iqbal</u>, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* <u>Twombly</u>, 550 U.S. at 570]").

It is also important to note that "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>McTernan v. City of York, Pennsylvania</u>, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, <u>Phillips</u>, 515 F.3d at 231, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 553, n. 8. The Supreme Court's <u>Twombly</u> formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." *Id.*, *quoting* <u>Phillips</u>, 515 F.3d at 234, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 556.

B.    <u>Analysis</u>.

(1)    <u>TILA Violations</u>.

As applied to this case, Plaintiffs have sufficiently pled a claim for relief that is plausible on its face. Plaintiffs have done more than simply allege that Defendants violated TILA, which would have constituted a vague and conclusory allegation deserving of dismissal. Instead, Plaintiffs specifically allege that Resmae violated TILA

6

by "fail[ing] to provide accurate TILA disclosures and understated the finance charge while overstating the amount financed."  (FAC at ¶ 13).  Plaintiffs also specifically allege that "[c]ertain charges, paid by Plaintiffs incident to the extension of credit, were included in the calculation of the amount financed when they should have been included in the calculation of the finance charge" and that the "misallocation of these charges resulted in understatement of the applicable annual percentage rate." (FAC ¶ ¶ 14,15).   Plaintiffs also allege with specificity, that "the TILA disclosure form used by Resmae omits the payment period in violation of 15 U.S.C. § 1638(a)(6)."  (FAC ¶ 16).  Finally, Plaintiffs assert that, by virtue of these violations of TILA, they retained their right to rescind the loan and did so by letter to U.S. Bank Trust dated June 2, 2008.  (FAC ¶ 17 and 18).

Even if the undersigned agreed that the manner in which the payments were set forth in the disclosure statement presented to Plaintiffs satisfied TILA,[5] there still exists

---

[5]It would seem logical to assume that 24 payments of a certain amount which commenced on March 1, 2007, and were followed by 6 payments of a different amount commencing 2 years, or 24 months later, on March 1, 2009, would mean monthly statements.  However, as the Seventh Circuit succinctly held in Hamm v. Ameriquest Mortg. Co., 506 F.3d 525, 531 (7th Cir. 2007), *cert. denied*, 128 S.Ct. 1706 (2008):

> We emphasize that we are not holding that a Disclosure Form that fails to use the magic word "monthly" will always fail to comply with the requirement in § 1638(a)(6) of disclosing the payment period. The Commentary itself lists "monthly" and "bi-weekly" only as two examples of the way in which a lender might comply with the rule. The key point is that the borrower should not have to make any assumptions; she should be told her payment period in explicit terms. (For example, a Disclosure Statement that said "payment is due on the first of every month from March 1, 2002, through January 1, 2032," would effectively tell the borrower that her payment period is monthly without using the word "monthly.") Because Ameriquest's form required such

the claims concerning the miscalculation of the finance charge and the amount financed,
which would constitute a violation of TILA.  *See* 15 U.S.C. §1638(2)(A)(describing the
calculation of the amount financed).   Defendants' contention that these claims should be
dismissed because Plaintiffs "offer no evidence in support of their allegation"
misconstrues the parties respective burdens and the standard of review applicable at this
juncture.  This is a motion to dismiss which requires only a determination regarding the
sufficiency of the pleadings.  In other words, the Defendants are only entitled to have this
action dismissed pursuant to Fed. R.Civ.P. 12(b)(6) if the Plaintiffs have "failed to **state** a
claim upon which relief can be granted," (emphasis added).  It is not a motion for
summary judgment which requires consideration of not only the pleadings but "discovery
and disclosure materials on file and any affidavits" in order to determine the existence of
any material issue of fact which would preclude judgment as a matter of law.  *See*
Fed.R.Civ.P.56(c).  Consequently, Plaintiffs bore no obligation at this stage of the
litigation to "prove" their TILA violation claims and their First Amended Complaint
cannot be dismissed on that grounds.

     (2)    <u>Rescission Claim</u>.

     Defendants next argue that Plaintiffs' First Amended Complaint should be

---

an assumption, it did not meet TILA's requirements.

Although Plaintiffs in the case at bar may have been given more information between the
first payment and last upon which to base their assumption that the designated payments
were due monthly, they nonetheless were required to **make an assumption** which appears
to contravene the requirements and very purpose of TILA.

dismissed due to their lack of performance, incorporating by reference the arguments

raised in a prior motion to dismiss (Doc. 32 at 12)[6].  At the heart of this argument is

Defendants' contention, contained in their earlier reply brief (Doc. 17), that:

> Defendant has indeed performed first by honoring Plaintiffs' notice of
> rescission. [Footnote omitted].  Defendant agreed to allow Plaintiffs to
> rescind the transaction and provided Plaintiffs with the proper rescission
> amount.  Indeed, Plaintiffs do not contest the rescission amount in their
> Response.  For obvious reasons, Defendant has **not removed its security
> interest** from the property. [Footnote omitted].  Removal of its mortgage
> would leave Defendant wholly unprotected if Plaintiffs, as is the case here,
> were unable to pay back the rescission amount.  Plaintiffs have failed to
> present any evidence that they have or even can acquire financing to repay
> Defendant.  Moreover, Plaintiffs have not presented any evidence that they
> could obtain financing if Defendant were to remove its security interest.
> [Footnote omitted].

(Doc. 17 at 4) (emphasis added).  Defendants have again placed the cart before the horse

and have ignored, in significant part, the very law they cite in their prior Reply brief

(Doc. 17).

For example, in <u>Williams v. Saxon Mortg. Co.</u>, 2008 WL 45739 (S.D. Ala. Jan. 02,

2008), the Court held:

> Unquestionably, "[w]hen a borrower rescinds a loan, he or she must return
> the money borrowed." <u>In re Porter</u>, 961 F.2d 1066, 1077 (3rd Cir.1992). A
> pivotal question presented by this Motion for Summary Judgment is when.
> The statute delineates a specific procedure to be followed when the debtor
> exercises its right of rescission. In particular, § 1635(b) provides that upon

---

[6] Defendants' prior motion to dismiss (doc. 9) was denied as moot by the District
Judge.  However, in so doing, the court recognized that defendants have incorporated, by
reference, those arguments into Document 32 and noted that the previous arguments
would be considered by the court in ruling on the instant motion to dismiss.  (<u>See</u> Doc.
53, p. 1, n. 1)

receipt of notice of rescission, the creditor shall return all earnest money or downpayments to the debtor and shall terminate its security interest in the property. "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor." 15 U.S.C. § 1635(b); *see also* Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.2005) ("upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest"). Thus, the statute contemplates a three-step sequence in which the debtor notifies the creditor of exercise of rescission rights, the creditor tenders all payments received from the debtor and terminates its security interest in the residence, and the debtor tenders the loan proceeds to the creditor. The Eleventh Circuit has explained that the "sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission." Williams, 968 F.2d at 1140. In this context, "all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." Id.FN7 The net effect of this reconfiguration of conventional rescission procedures is that the consumer is placed in a much stronger bargaining position than he or she would otherwise enjoy. *See id.*

> FN7. In that regard, one court remarked that "[i]t is apparent from the plain language of the statute that the borrower does not have to tender the proceeds of the loan before invoking her right to rescind unless and until a court decides otherwise and modifies the statutory scheme." Johnson v. Chase Manhattan Bank, USA N.A., 2007 WL 2033833, *5 (E.D.Pa. July 11, 2007).

**If the creditor fails to comply with the § 1635(b) procedure following receipt of the rescission demand, that omission constitutes a separate violation of TILA**. *See* Belini, 412 F.3d at 25 (if creditor failed to return all money paid and void security interest within 20 days after receipt of valid notice of rescission, creditor had "generally violated a 'requirement' of section 1635"); *see also* In re Hopkins, 372 B.R. 734, 751 (Bankr.E.D.Pa.2007) ("The failure to honor a valid rescission demand is itself a TILA violation ....").

2008 WL 45739 at * 3-4 (emphasis added).   The Court in Williams then addressed the

request of its defendant to "(a) order plaintiffs to prove within 30 days that they have the

wherewithal to repay the loan immediately as a single lump-sum payment, and (b) grant summary judgment in [defendant's] favor if plaintiffs fail to make such a showing." *Id.* at 5. The <u>Williams</u> Court held that defendant's request to modify the statutory procedures was inappropriate for three reasons: (1) defendant's inappropriate attempt to shift the burden of proof to the plaintiff; (2) the fact that the unrebutted evidence nonetheless presented by the plaintiffs established that there was no reason to believe suitable arrangements could not be worked out to make defendant whole within a reasonable period of time if rescission was ordered; and (3) "[g]iven the discretion within which the Court may condition the right to rescission, it is not necessary that the [debtors] demonstrate they have the means to secure the necessary financing at this point in time." 2008 WL 45739 at * 5-6, *quoting, as to the third reason,* <u>Jones v. Rees-Max, LLC</u>, 514 F.Supp2d 1139, 1146 (D. Minn. 2007).

Moreover, the <u>Williams</u> case involved a motion for summary judgment after six months of discovery, whereas the case at bar involves a motion to dismiss filed prior to any discovery by the parties by virtue of an order staying all discovery until the motion to dismiss is resolved. Consequently, Defendants have proffered nothing more than mere speculation that the Plaintiffs are incapable of performing if rescission is ordered.[7]

---

[7] The court finds unavailing Defendants' contention that "Plaintiffs' inability to repay the borrowed funds is further evidenced by Plaintiffs' Opposition to Defendants' Motion to Require Plaintiffs to Pay Funds to the Court." Reply Brief (Doc. 48 at 4, n. 2). Plaintiffs' Opposition was principally predicated on the applicable law that their "duty, if any, to tender funds back to the entity that is determined to have proper standing as the existing creditor, and the amount of that tender obligation, will [first] be the subject of

Defendants' argument is premature at best and, in light of their refusal to void their security interest, contrary to the statutory scheme developed to address TILA violations. As was true in <u>Williams</u>, Defendants' request for modification of the rescission procedures by essentially requiring Plaintiffs to fully repay the loan proceeds in advance of Defendants terminating their security interest in Plaintiffs' residence and reimbursing the Plaintiffs the payments made to date is premature.  The <u>Williams</u> Court found it inappropriate even at the summary judgment stage to "deviate from th[e] sensible, efficient methodology" described in official staff interpretations to TILA regulations as follows: "Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property."  2008 WL 45739 at * 7, *quoting* 69 Fed.Reg. 16,769, 16,774 (2004).  Such is more obviously the case here.  Only if, upon trial on the merits, the Court concludes that the Princes are entitled to rescind the loan, should the Court address the proper procedures for implementing the rescission.

       (3)    <u>Specific Causes of Action</u>.

            (a)    <u>Wrongful Foreclosure</u>.

---

discovery and determination by the Court and/or jury as to credits due to borrower and lender, and the other rights and duties of the parties."  Plaintiffs' Opposition (Doc. 46) at ¶ 3.  Plaintiffs nonetheless expressed their willingness and ability to pay "amounts each month equal to the original periodic payments" pending resolution of these issues.  *Id.*

Defendants first argue that MERS and SPS should be dismissed "because neither of these defendants conducted the foreclosure of plaintiffs' mortgage." (Doc. 32 at 12). Defendants' mere contention, however, is insufficient. Again, Defendants' motion is premature.[8] The role of both MERS and SPS in the foreclosure is clearly in dispute[9] and has yet to be tested through discovery.

With specific respect to MERS, Defendants argue that all claims should be dismissed "because MERS no longer had an interest in the mortgage after July 11, 2008," by virtue of its assignment to U.S. Bank Trust prior to the foreclosure. (Doc. 32 at 18). This argument ignores not only the dispute that exists concerning the nature of the interest held by MERS prior to the alleged assignment, the nature of the interest conveyed by the assignment to U.S. Bank Trust, and the actual role MERS played throughout, but the virtually undisputed fact that the Plaintiffs exercised their right to rescission, rightly or wrongly, on June 2, 2008, prior to MERS assignment of any interest to U.S. Bank Trust.

---

[8]There has been no discovery in this case, and none of the defendants have yet filed answers to the complaints, with the exception of SPS which, as attorney-in-fact for U.S. Bank Trust, did file a Counterclaim for Ejectment (Doc. 30), for which an Answer (Doc. 47) was filed by the Plaintiffs in which they allege, *inter alia*, "that there was no effective foreclosure because the mortgage had previously been cancelled and because the purported foreclosure was **not performed by any party having standing to foreclose**." Answer to Counterclaim (Doc. 47) at ¶ 9 (emphasis added).

[9]Plaintiffs have alleged, *inter alia*, that "SPS, MERS and U.S. Bank are engaged in and have engaged in a pattern and practice of falsifying and recording assignments of mortgages for the enabling joint ventures to foreclose on property of unsuspecting and unknowing consumers, such as Plaintiffs, illegally and without legal standing or power to foreclose." (FAC at ¶ 30).

Defendants also contend that any claim for wrongful foreclosure should be dismissed because it is predicated on a right to rescind which Plaintiffs did not possess. For the reasons stated above, this contention is also without merit.

(b)    Slander of Title.

Defendants again argue that Plaintiffs have no right to rescind and thus Defendants' foreclosure deed was properly recorded and could not constitute a slander of Plaintiffs' title.  Defendants also argue that MERS and SPS did not conduct the foreclosure or take possession of the property by virtue of foreclosure and thus should be dismissed.  For the reasons stated above, these arguments are without merit.

(c)    Negligence.

Defendant again argues that this claim is due to be dismissed because it is premised on Plaintiffs' "faulty demand for rescission."  Again, for the reasons stated above, Defendants' contention is without merit.

(4).    Equal Credit Opportunity Act ("ECOA").

Plaintiffs' ECOA claim against the Defendants is predicated solely on their contention that plaintiffs "held and exercised a valid right to rescind the loan transaction under §1635(a) and that Defendants, rather than comply with the §1635(b) requirements, instead instituted foreclosure and did so as a result of and in retaliation for the exercising of the right to rescind."  Response (Doc. 45 at 17-18, *citing* FAC ¶¶ 43-45).  Plaintiffs rely on the portion of the ECOA which renders it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction - - -

14

because the applicant has in good faith exercised any right under this chapter."[10] 15

U.S.C. 1691(a)(3).  Plaintiffs further rely on the Eleventh Circuit's definition of the *prima*

*facie* elements of a claim under this section:

> In order to establish a violation of § 1691(a)(3), a plaintiff must show that:
> (1) he exercised in good faith (2) a right under the Consumer Credit
> Protection Act, and (3) as a result, the creditor discriminated against him
> with respect to the credit transaction.

Bowen v. First Family Financial Services, Inc., 233 F.3d 1331, 1335 (11th Cir. 2000),

*citing* 15 U.S.C. §1691(a)(3). [11]

The issue in Bowen, however, was "how were these plaintiffs discriminated

against, and for exercising what rights?"  233 F.3d at 1335.  According to the Bowen

Court:

> An initial premise of the plaintiffs' argument in this case is that the TILA
> grants consumers a non-waivable right to litigate, individually and through
> a class action, any claims arising under the statute. This right to litigate
> TILA claims, the plaintiffs maintain, is prospectively waived by the
> arbitration agreements that First Family requires credit applicants to sign.
> Because a credit applicant would be denied credit if he declined to sign the
> arbitration agreement in order to preserve his right to litigate under the
> TILA, the plaintiffs argue that First Family discriminates against applicants
> based on a good faith exercise of their rights under the Consumer Credit

---

[10] The "chapter" refers to the Consumer Credit Protection Act of which TILA is a
part.

[11] To the extent the Defendants argue that Plaintiffs have failed to state a cause of
action under 15 U.S.C. § 1691(a)(1), their arguments are irrelevant.  Plaintiffs **do not**
contend that they were discriminated against "with respect to any aspect of a credit
transaction . . . on the basis of race, color, religion, national origin, sex or marital status."
15 U.S.C. § 1691(a)(1).  Instead, Plaintiffs assert only a claim of discrimination based on
a good faith exercise of their rights under TILA.  *See* 15 U.S.C. § 1691(a)(3).

15

> Protection Act, in violation of § 1691(a)(3) of the ECOA and its
> implementing regulation, Regulation B, 12 C.F.R. § 202.4.

*Id*.  The <u>Bowen</u> Court then observed that "there is no allegation in the complaint that the

plaintiffs voiced any objection to signing the arbitration agreement."  *Id*.  Consequently,

the <u>Bowen</u> Court questioned plaintiffs' allegation of discrimination:

> Even if the complaint alleged that the plaintiffs objected to the arbitration
> agreement, and even if we assume that such an objection somehow
> constitutes the requisite exercise of their rights, it is unclear what
> discrimination the plaintiffs suffered as result of that exercise of their rights.
> There is no allegation that either Bowen or Ford were refused a loan. To the
> contrary, the complaint alleges that both of them received a loan. Nor is
> there any allegation that either plaintiff paid a higher interest rate as a result
> of having objected to the arbitration clause-if they did object to it.

233 F.3d at 1335-36.  The Eleventh Circuit then held that "[i]n order to establish the

discrimination element of a § 1691(a)(3) claim, it may be necessary for the plaintiff to

show either that the creditor refused to extend credit to the applicant or that it extended

credit but on less favorable terms."  233 F.3d at 1336.  The Court ultimately concluded

that "plaintiffs cannot show that when [defendant] required them to sign an agreement to

arbitrate any claims arising under the TILA, it discriminated against the plaintiffs in

violated of § 1691(a)(3) because they exercised a right under the Consumer Credit

Protection Act."  233 F.3d at 1338. The <u>Bowen</u> decision rested, therefore, principally on

the Court's analysis of the "right" allegedly exercised by the plaintiffs.

    In contrast to <u>Bowen</u>, there is no question in the case at bar that Plaintiffs exercised

a right under the statute, namely the right to rescind the loan transaction under

§1635(a).  There is, however, a question about Plaintiffs' allegation that the foreclosure

was in retaliation for their rescission of the loan and that such constituted discrimination within the meaning of § 1691(a)(3). This issue has not been directly addressed to date within the Eleventh Circuit.

In <u>Nicholson v. Johanns</u>, 2007 WL 3407045 (S.D. Ala. Nov. 13, 2007), the District Court addressed the ECOA in the context of a discrimination claim under §1691(a)(1).[12] In that context, the District Court held that "[d]iscrimination on the basis of some protected class (such as race) is a vital component to plaintiffs' ECOA claim." 2007 WL 3407045 at * 5. The District Court then recognized that "Courts which have interpreted ECOA have used the same analytical framework as that used in actions pursuant to Title VII of the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e to 2000e-17" and thus applied a *prima facie* test which is not applicable to the case at bar.[13] *Id*. at * 5-6. The Sixth Circuit has, however, addressed specifically a retaliation claim under § 1691(a)(3) which is similar to the claim asserted in this case. <u>Lewis v. ACB Business Services, Inc.</u>, 135 F.3d 389 (6th Cir. 1998). In <u>Lewis</u>, the Sixth Circuit

---

[12]As alluded to in n. 9, *supra*, the ECOA creates a private right of action against a creditor who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1).

[13]The *prima facie* test applied to a claim under 15 U.S.C. § 1691(a)(1) is one in which the plaintiff is required "to demonstrate that (a) she is a member of a protected class, (b) she applied for and was qualified for an extension of credit, (c) despite her qualifications she was rejected, and (d) 'others of similar credit structure were extended credit or were given more favorable treatment than plaintiff'." <u>Nicholson</u>, 2007 WL 3407045 at * 6, *quoting in part* <u>Mercado Garcia v. Ponce Federal Bank, F.S.B.</u>, 779 F.Supp. 620, 628 (D. Puerto Rico 1991)

17

consolidated the appeals taken in two related cases which arose out of the Lewis's credit relationship with American Express Travel Related Services Company, Inc. ("Amex"). Lewis stopped making payments on his substantial debt to Amex for charges he made on his Gold Card. Three lawsuits were eventually filed, two by Lewis and one by Amex. The first suit was filed in federal court by Lewis in Dayton, Ohio ("the Dayton Case") when Amex turned the debt over to ACB Business Services, Inc. ("ACB") for collection. In that case, Lewis alleged, *inter alia*, that ACB's collection efforts violated the Fair Debt Collection Practices Act. After the Dayton case was filed, Amex sued Lewis in state court for the unpaid balance on his Gold Card. Lewis then filed suit in federal court in Cincinnati, Ohio ("the Cincinnati case") alleging, *inter alia*, that the defendants (ACB, Amex and Amex's counsel) filed the state court action in retaliation for Lewis having filed the Dayton case and thereby violated the ECOA. It is this ECOA claim in the Cincinnati case that is indistinguishable from Plaintiffs' ECOA claim in the case at bar.[14]

Applying the same framework and burden allocation system found in Title VII cases, the Sixth Circuit developed the following *prima facie* test for Lewis's ECOA claim under 15 U.S.C. § 1691(a)(3):

> [I]n order for Lewis to make out a prima facie case of retaliation, he must allege facts sufficient to show that (1) he engaged in a statutorily protected activity; (2) suffered an adverse credit action; and (3) a causal connection

---

[14]Lewis appealed the district court's granting of the defendant's motion for a judgment as a matter of law at the conclusion of the trial in the Dayton case and the dismissal of the Cincinnati case on the grounds that Amex had not discriminated against Lewis when it filed the state court suit to recover on the debt.

exists between the two.

135 F.3d at 406, *citing* <u>Johnson v. United States Dep't of Health and Human Servs.</u>, 30

F.3d 45, 47 (6th Cir. 1994).  The Sixth Circuit concluded that Lewis could not make such

a showing because the ECOA defines "adverse action" as::

> a denial or revocation of credit, a change in the terms of an existing credit
> arrangement, or a refusal to grant credit in substantially the amount or on
> substantially the terms requested. Such term does not include a refusal to
> extend additional credit under an existing credit arrangement where the
> applicant is delinquent or otherwise in default, or where such additional
> credit would exceed a previously established credit limit.

135 F.3d at 406, *quoting* 15 U.S.C. § 1691(d)(6).   In addition, the Sixth Circuit based its

rationale on the fact that the definition of "adverse action" in the ECOA "does not include

'*[a]ny action* or forbearance relating to an account taken *in connection* with inactivity,

*default*, *or delinquency* as to that account'." 135 F.3d at 406, *quoting* 12 C.F.R. §

202.2(c)(2)(ii) (emphasis in original).  The Sixth Circuit held that Amex was entitled,

even under ECOA, to sue Lewis "to recover thousands of dollars in undisputed debt that

the consumer refuses to honor" and thus did not discriminate against Lewis by filing the

state court action.  135 F.3d at 406-07.  *See also*, <u>Lombardo v. Parkview Fed. Sav. Bank</u>,

2005 WL 1126741 (N.D. Ohio April 20, 2005)(ECOA retaliation claim dismissed under

the rationale of <u>Lewis</u>).

Plaintiffs in the case at bar may ultimately succeed on their claim of wrongful

foreclosure against one or more of the defendants but they, nonetheless, have failed to

demonstrate that the foreclosure itself constituted a form of discrimination cognizable

under the ECOA, particularly absent any allegation that plaintiffs were treated differently than any other debtor similarly situated. As the District Court in <u>Nicholson</u> surmised: "The ECOA is not a general, catch-all, prophylactic remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined; rather, the conduct it proscribes is the discriminatory administration of a credit transaction [and] [w]ithout proof of discrimination, plaintiffs have no cognizable ECOA claim." 2007 WL 3407045 at* 5. Consequently, it is recommended that defendants' motion to dismiss Plaintiffs' ECOA claim be granted.

## **CONCLUSION**

For the reasons stated above, the undersigned Magistrate Judge recommends that Defendants' motion to dismiss (Doc. 32) be granted as to Plaintiffs' ECOA claim against the defendants but denied as to all other claims.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this 25th day of August, 2009.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

2.

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

3.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**Done** this 25th day of August, 2009.

/s/ Katherine P. Nelson                                    
UNITED STATES MAGISTRATE JUDGE